No. 23-10309

# In the United States Court of Appeals
## for the Eleventh Circuit

LEVI GOLDFARB and BENJAMIN GOLDFARB,
Plaintiffs-Appellees,

v.

RELIANCE STANDARD LIFE INSURANCE COMPANY,
an Illinois corporation,
Defendant-Appellant.

On appeal from an Order Granting Plaintiff's Motion for Summary Judgment
and Final Judgment of the United States District court for the Southern
District of Florida (Miami Division) in Case No. 22-60804-CIV-MORENO,
Hon. Federico A. Moreno, dated and entered on January 3, 2023.

## OPENING BRIEF FOR DEFENDANT-APPELLANT
## RELIANCE STANDARD LIFE INSURANCE COMPANY

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
Joshua Bachrach, Esquire
joshua.bachrach@wilsonelser.com
2001 Market Street, Suite 3100
Philadelphia, PA 19103
215 606-3906 (T)
215 627-2665 (F)
*Counsel for Defendant-Appellant*
*Reliance Standard Life Insurance Company*

**CERTIFICATE OF INTERESTED PERSONS AND**
**CORPORATE DISCLOSURE STATEMENT**

**No. 23-10309**

LEVI GOLDFARB and BENJAMIN GOLDFARB,
Plaintiffs-Appellees,
v.
RELIANCE STANDARD LIFE INSURANCE COMPANY,
Defendant-Appellant.

Appellant Reliance Standard Life Insurance Company certifies that the following

persons and entities have an interest in the outcome of this appeal:

- Bachrach, Joshua, Attorney for Defendant-Appellant
- Goldfarb, Levi, Plaintiff-Appellee
- Goldfarb, Benjamin, Plaintiff-Appellee
- Metsch, Lawrence (Attorneys for Plaintiffs-Appellees)
- Moreno, Federico A. Moreno, Judge, U.S. District Court, S.D. Florida
- Reliance Standard Insurance Company, Defendant-Appellant
- Suarez, Tanya, Attorney for Defendant-Appellant
- Tokio Marine Holdings, Inc., Parent Corporation of Defendant-Appellant
- Wilson Elser Moskowitz Edelman & Dicker LLP, Attorneys for Defendant-Appellant

**WILSON ELSER MOSKOWITZ**
**EDELMAN & DICKER, LLP**

By:   s/ Joshua Bachrach
       Joshua Bachrach, Esquire
       Two Commerce Square
       2001 Market Street, Suite 3100
       Philadelphia, PA 19103
       215.606.3906 p./215.627.2665 f.
       joshua.bachrach@wilsonelser.com
       *Attorneys for Appellant Reliance*
       *Standard Life Insurance Company*

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellant Reliance Standard Life Insurance Company requests oral argument. This appeal involves the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, and implicates important questions regarding the burden of proof and standard of review in cases governed by that Act. Therefore, it warrants oral argument to ensure a proper resolution of those issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ..................................................................... C1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION ................................................................................................. 1

STATEMENT OF JURISDICTION ...................................................................... 2

STATEMENT OF ISSUE PRESENTED ON APPEAL .......................................... 2

STATEMENT OF THE CASE .............................................................................. 3

    I.    Relevant Factual Background ................................................................ 3

    II.    Proceedings Below .............................................................................. 9

STANDARD OF REVIEW .................................................................................. 12

SUMMARY OF ARGUMENT ............................................................................ 15

ARGUMENT ...................................................................................................... 18

    I.    The District Court Improperly and Effectively Applied a *De Novo* Standard of Review and Substituted Its Own Judgment for That of Reliance Standard When It Awarded Accidental Death Benefits .............................................................. 18

        A.    Claimants Failed to Satisfy Their Burden of Proving That Dr. Goldfarb's Death Was Accidental .............................. 18

        B.    The District Court Disregarded the *Claimants'* Burden of Proving That Dr. Goldfarb's Death Was "Accidental" ........ 19

C.     The District Court Misapplied the *Wickman* Test in
Any Event ...................................................................................23

D.     Reliance Standard's Denial of AD&D Benefits Cannot
Be Considered Unreasonable and Should Be Upheld ..............27

CONCLUSION ........................................................................................30

CERTIFICATE OF COMPLIANCE.......................................................32

CERTIFICATE OF SERVICE .................................................................33

# TABLE OF AUTHORITIES

## Case Law:

*Alexandra H. v. Oxford Health Ins., Inc.*,
   833 F.3d 1299 (11th Cir. 2016) ...................................................................13

*\*Blankenship v. Metro. Life Ins. Co.*,
   644 F.3d 1350 (11th Cir. 2011) .....................................................13, 15, 27

*Brady v. Oregon Lumber Co.*,
   117 Or. 199, 243 P. 96, *reh. den.*, 118 Or. 15. 245 P. 732 (1926) .......... 25-26

*Buce v. Allianz Life Ins. Co.*,
   247 F.3d 1133 (11th Cir. 2001) ...................................................................19

*Capone v. Aetna Life Ins. Co.*,
   592 F.3d 1189 (11th Cir. 2010) .............................................................13, 27

*Carter v. Galloway*,
   352 F.3d 1346 (11th Cir. 2003) ...................................................................12

*Conkright v. Frommert*,
   559 U.S. 506 (2010)......................................................................................15

*Cozzie v. Metropolitan Life Ins. Co.*,
   140 F.3d 1104 (7th Cir. 1998) .....................................................................19

*Doyle v. Liberty Life Assurance Co. of Bos.*,
   542 F.3d 1352 (11th Cir. 2008) .............................................................. 14-15

*Eckelberry v. Reliastar Life Ins. Co.*,
   469 F.3d 340 (4th Cir. 2006) .......................................................................19

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101 (1989)................................................................................13, 27

*Glazer v. Reliance Standard Life Ins. Co..*,
   514 F.3d 1241 (11th Cir. 2008) .............................................................14, 18

iv

*Griffis v. Delta Family-Care Disability,*
 723 F.2d 822 (11th Cir. 1984) .......................................................14

*Horton v. Reliance Std. Life Ins. Co.,*
 141 F.3d 1038 (11th Cir. 1998) ...........................................10, 18

*Hunt v. Hawthorne Assocs., Inc.,*
 119 F.3d 888 (11th Cir. 1997) ..............................................13, 27

*In re Estate of Heckman,*
 39 P.3d 1228 (Colo. App. 2001)....................................................26

*Jean Baptiste v. Securian Financial Group, Inc.,*
 557 F. Supp. 3d 1271 (S.D. Fla. 2021) ...........................20-21, 27

*Jett v. Blue Cross & Blue Shield of Alabama, Inc.,*
 890 F.2d 1137 (11th Cir. 1989) ............................................14, 27

*Metro. Life Ins. Co. v. Taylor,*
 481 U.S. 58 (1987).........................................................................2

*Metro Life Ins. Co. v. Glenn,*
 554 U.S. 105 (2008).....................................................................14

*Morgan v. Fortis Benefits Ins. Co.,*
 107 P.3d 267 (Alaska 2005) ........................................................22

*Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.,*
 320 F.3d 1260 (11th Cir. 2003) ...................................................12

*Nichols v. Unicare Life Ins. Co.,*
 739 F.3d 1176 (8th Cir. 2014) .....................................................19

*Prelutsky v. Greater Ga. Life Ins. Co.,*
 692 Fed. App'x 969 (11th Cir. 2017)............................................27

*Richey v. Hartford Life & Accident Ins. Co.,*
 608 F. Supp. 2d 1306 (M.D. Fla. 2009) .......................................28

*Tippett v. Reliance Standard Life Ins. Co.,*
    457 F.3d 1227 (11th Cir. 2006) ....................................................13

*Turner v. Delta Family-Care Disability and Survivorship Plan*,
    291 F.3d 1270 (11th Cir. 1984) ...............................................14, 28

*White v. The Coca-Cola Co.*,
    542 F.3d 848 (11th Cir. 2008) .................................................14, 28

*\*Wickman v. Northwestern Nat'l Ins. Co.*,
    908 F.2d 1077 (1st Cir. 1990).....................................19-21, 23-25

## Statutes:

28 U.S.C. § 1291 ...................................................................................2

28 U.S.C. § 1331 ...................................................................................2

29 U.S.C. § 1001, *et seq.*...............................................................*passim*

29 U.S.C. § 1132(e) ..............................................................................2

\*Authorities primarily relied upon

# INTRODUCTION

This appeal involves the review of the district court's entry of summary judgment in favor of the beneficiaries of a Group Accidental Death & Dismemberment ("AD&D") insurance policy governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). The decedent, a medical doctor, disappeared while attempting to climb the twelfth highest summit in the world. Because the body was never recovered, the insured's actual cause of death is unknown. Therefore, Reliance Standard Life Insurance Company ("Reliance Standard") denied the claim based on lack of proof of an accidental death.

But even if it is believed that the decedent fell off the mountain as claimed by here, the loss still cannot be considered "accidental." Days before his disappearance, the mountain climbing instructor accompanying the decedent told him that the conditions were "too dangerous" and left. The decedent was supposed to leave the mountain the next day but instead decided to try to reach the summit on his own – a feat that had never been accomplished in winter. The instructor warned the decedent against the climb and told him that he "cannot take responsibility for his actions." The decedent still attempted to climb the peak but died doing so. Based on this knowledge of the risk, the death cannot be an accident.

The district court concluded that Reliance Standard's denial of the claim was arbitrary and capricious. But the court reached that conclusion by substituting its own judgment for that of Reliance Standard and failing to address the arguments that were raised. The district court's grant of summary judgment is contrary to the facts, and it is contrary to the way in which a claim decision is reviewed under the deferential standard and should be reversed.

## STATEMENT OF JURISDICTION

The district court had federal question jurisdiction over the dispute based on 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), as the action involves a claim under the ERISA statute and, therefore, is "necessarily federal in character."[1] The Court of Appeals has jurisdiction over this appeal under 28 U.S.C. § 1291 because this appeal is from a final judgment by the district court entered on January 3, 2023. The entry of final judgment followed the district court's issuance of an order on January 3, 2023, entering summary judgment in favor of the Plaintiffs-Appellees and disposing of all claims. (ECF Nos. 25 and 26) (App'x at 352a-356a). A timely notice of appeal was filed on January 31, 2023. (ECF Doc. 28) (App'x at 357a-358a).

## STATEMENT OF ISSUES PRESENTED ON APPEAL

1.      Did the district court improperly and effectively apply a *de novo* standard of review and wrongly substitute its own judgment for that of Reliance

---

[1] *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987).

Standard when it held that Reliance Standard's conclusion that the Claimants failed to prove that the death was "accidental" was arbitrary and capricious where the decedent's body was never found or his cause of death determined and the Claimants have conceded that "it is inconclusive as to whether Dr. Goldfarb died by accidental means."? *Suggested Answer: Yes.*

## STATEMENT OF THE CASE

### I. Relevant Factual Background

Reliance Standard delivered Group Life Policy No. GL-160348 ("Policy") to Inozyme Pharma, Inc., on January 1, 2019. (App'x at 010a-054a, 055a-080a). The Policy provides Basic Life and Accidental Death & Dismemberment ("AD&D") benefits to eligible employees of Inozyme Pharma as part of an employee benefit plan governed by ERISA. (App'x at 010a-054a, 055a-080a). The maximum amount of Basic Life benefits and AD&D benefits available under the Policy were $500,000 each. As to the AD&D coverage, the Policy stated that Reliance Standard will pay an accidental death benefit for the loss of life resulting from an injury provided that the loss is "caused solely by an accident…." (App'x at 072a). "Accident" is not defined in the Policy, but "injury" is defined to mean "accidental bodily injury to an insured that is caused directly and independently of all other causes by accidental means…." (App'x at 062a).

Alexander Goldfarb-Rumyantzev, M.D. ("Dr. Goldfarb" or "decedent"), began working as a Senior Medical Director for Inozyme Pharma on August 24, 2020, and was enrolled in Inozyme Pharma's employee benefit plan which included coverage under the Reliance Standard Policy. (App'x at 247a-248a). On or about December 24, 2020, Dr. Goldfarb traveled to Pakistan for a mountain climbing trip. (App'x at 096a). Upon his arrival in Pakistan, Dr. Goldfarb met up with his climbing partner Zoltan Szlanko, a certified climbing instructor since 1991, to climb Pastore Peak, the twelfth highest summit in the world. (App'x at 097a, 110a, 113a).

On January 12, 2021, after spending six days trekking to a nearby base camp (Broad Peak Base Camp) and preparing for their climb, Dr. Goldfarb and Mr. Szlanko began their ascent to Pastore Peak Base Camp. (App'x at 124a).[2] Mr. Szlanko went first to "break trail" and look for the route to the camp. (App'x at 124a). Mr. Szlanko found the terrain to be heavily crevassed and much too dangerous for their climb, so they found a safe place and camped for the night. (App'x at 124a).

The next morning, Mr. Szlanko again assessed the climbing conditions and warned Dr. Goldfarb that the route to Pastore Peak Base Camp included "a labyrinth of hidden crevasses either covered with loose snow or stones," as well as "black ice

---

[2] The "detailed account" from Mr. Szlanko (App'x 124a-127a) was attached to the Complaint.

on the surface" which provided no grip but, rather, broke when he tried to place an ice axe or crampons in it. (App'x at 124a). As noted, Mr. Szlanko had been a certified mountain climbing instructor since 1991. (App'x at 124a). Given the dangerous conditions he observed on the "approach route to Pastore Peak Base camp," Mr. Szlanko deemed the winter climbing conditions to be "even worse higher up the mountain," so he recommended that they both turn back. (App'x at 124a). Mr. Szlanko then began heading back to Broad Peak Base Camp so that they could "concentrate on their main goal, Broad Peak," but Dr. Goldfarb decided to stay another night to camp and said he would return in the morning. (App'x at 124a).

Dr. Goldfarb did not return to the Broad Peak Base Camp the next morning. Rather, on January 14, 2021, Dr. Goldfarb called Mr. Szlanko to inform him that he was going to continue his ascent to Pastore Peak Base Camp alone despite Mr. Szlanko's repeated warnings. (App'x at 124a). Mr. Szlanko "again called his attention to the dangers of the terrain and the danger of moving solo on such terrain" but Dr. Goldfarb "insisted on going anyway"; Mr. Szlanko told Dr. Goldfarb that he "cannot take responsibility for his action" if he continued his climb. (App'x at 124a). Dr. Goldfarb called Mr. Szlanko again on January 15, 2021, and said he was going to make a solo push for the summit of Pastore Peak. (App'x at 125a). There was no further communication with Dr. Goldfarb, and search and rescue operations commenced on January 17, 2021. (App'x at 125a).

On January 18, 2021, rescuers in a helicopter spotted what they believed was a lifeless body face down in the snow on the south-southeast slope of Pastore Peak. (App'x 126a). Due to safety protocols, the helicopter could not fly closer but one of the occupants of the helicopter took high resolution photographs. (App'x at 125a). Mr. Szlanko viewed the photographs (which had to be analyzed and magnified) and, based on the colors of the jacket and rucksack, believed that the body was that of Dr. Goldfarb. (App'x at 125a).

One day later, on January 19, 2021, Plaintiffs-Appellees (hereafter "Claimants") submitted a Group Life Claim Application Proof of Loss Statement to Reliance Standard seeking the maximum amount of Basic Life and AD&D benefits available under the Policy for the death of Dr. Goldfarb. (App'x at 291a-292a).

A ground mission was subsequently organized to retrieve the body that was spotted from the helicopter, but despite multiple attempts between January 20 and January 27, 2021, the body was never located and/or retrieved. (App'x at 097a-098a, 125a). During the mission, the "crevasses at the foot of the mountain" were searched but "they did not find any trace of Alex there." (App'x at 126a).[3] Therefore, even

---

[3] In his Affidavit, Claimant Levi Goldfarb stated the body spotted from the helicopter was "on a very steep and heavily crevassed part of the mountain which made it impossible to retrieve." (App'x at 097a, ¶ 12). However, Levi Goldfarb was not present in the helicopter and did not see the body or its location. Moreover, although Mr. Szlanko described the area where the body was seen from the helicopter as being "approx. 5800 meters, on the south-southeast slope of Pastore Peak, below a steep ice wall" (App'x at 126a), the fact is that Mr. Szlanko was not present in the

assuming the body that was spotted from the helicopter was that of Dr. Goldfarb, no autopsy could be performed to establish his actual cause of death.

On February 17, 2021, at the urging of Dr. Goldfarb's family, the Pakistani authorities issued a presumptive death certificate, signed by Assistant Commissioner Shigar, indicating that Dr. Goldfarb had been missing since January 16, 2020, and was presumed dead. (App'x at 098a, 108a). On March 29, 2021, the U.S. Department of State issued a Report of the Presumptive Death of an American Citizen Abroad. (App'x at 110a). Under "Cause of Death," the Report stated: "Reported missing, believed to be dead." (App'x at 110a).

It is undisputed that Reliance Standard paid out the $500,000 in Basic Life benefits under the Policy upon receipt of the documents from the Pakistani authorities and the U.S. Department of State. (Appx' at 142a). But on April 16, 2021, Reliance Standard notified Claimants that since Dr. Goldfarb's remains were never located, "the final manner and cause of his presumed death remain unknown." (App'x at 084a). Reliance Standard further stated: "Because it is not certain that Dr. Goldfarb … suffered loss of life due solely by an accident, we are unable to pay benefits in connection with the Policy's [AD&D] provision at this time." (App'x at 084a).

---

helicopter either. Significantly, no statements or affidavits from any member of the rescue team present in the helicopter that day were submitted to Reliance Standard.

Thereafter, Claimants, by letter from Amiel Weinstock of AMZ Estate Planning, appealed Reliance Standard's decision as to the AD&D portion of the Policy and submitted additional information in support of their claim on or about February 8, 2022. (App'x 091a-127a). This information included: (1) a Partial Decree, Determination of Death and Order on Petition for Formal Adjudication issued by the Probate and Family Court Department of the Trial Court of the Commonwealth of Massachusetts on August 13, 2021 (App'x at 093a-095a); (2) the first page of a Motion for Partial Decree filed by the Claimants (App'x at 096a); and (3) the Affidavit of Levi Goldfarb with exhibits that included the presumptive death certificates, various articles regarding Dr. Goldfarb's presumed death, and a "detailed account of the disappearance of Dr. Goldfarb" prepared by Mr. Szlanko. (App'x at 097a-127a).  Despite a representation in the February 8, 2022 letter that Dr. Goldfarb's body "was spotted at the bottom of a deep ravine" (App'x at 092a), no evidence or documentation whatsoever was submitted to Reliance Standard to support that representation.[4]

On March 2, 2022, Reliance Standard concluded that "there has been no supporting documentation provided to substantiate Mr. Goldfarb's … death was an accidental bodily injury that was caused directly and independently of all other

---

[4] *See* Note 3, *supra.*

causes by accidental means" and affirmed its denial of benefits under the AD&D portion of the Policy. (App'x at 129a-132a).

## II. **Proceedings Below**

Claimants commenced this ERISA action by filing a Complaint against Reliance Standard in the United States District Court for the Southern District of Florida, Fort Lauderdale Division, on April 26, 2022. (App'x at 005a-136a). Claimants claim that Reliance Standard's denial of AD&D benefits under the Policy in regards to Dr. Goldfarb's death was "'de novo wrong', 'arbitrary and capricious', and 'in breach of fiduciary duties.'" (App'x at 008a). Reliance Standard filed a timely Answer to the Complaint with Affirmative Defenses on May 25, 2022. (App'x at 137a-140a).

On June 19, 2022, Claimants filed a Motion for Summary Judgment and Statement of Material Facts claiming that there were no genuine issues of material fact in dispute and that they were entitled to a judgment against Reliance Standard in the amount of $500,000 representing the AD&D benefits under the Policy. (App'x at 141a-193a).[5] Reliance Standard filed a timely Brief in Opposition to

---

[5] In their Motion for Summary Judgment, *Claimants conceded that "it is inconclusive as to whether Dr. Goldfarb died by accidental means."* (App'x at 145a). But they wrongly suggested in their motion that this inconclusiveness somehow entitled them to "a presumption in favor of an accident" such that Reliance Standard was required to "come forward with competent evidence tending to establish that [Dr. Goldfarb] died by non-accidental means, such as a heart attack or starvation." (App's at 145a). In making this argument, the Claimants relied on *Horton v.*

9

Plaintiffs' Motion for Summary Judgment and in Support of Defendant's Cross-Motion contending that the initial burden of proving that the decedent's death was accidental under the terms of the Policy lies with the claimants and they had failed to carry that burden. (App'x at 246a-324a). Reliance Standard argued that under the arbitrary and capricious standard of review applicable in this ERISA action, its determination must be upheld since there was a reasonable basis for it.

Following the filing of Plaintiffs' Reply in Support of the Motion for Summary Judgment and Reliance Standard's Reply Brief in Support of Defendant's Motion for Summary Judgment, as well as a hearing, the district court issued an Order on January 3, 2023, granting Claimants' Motion for Summary Judgment and denying Reliance Standard's Cross-Motion for Summary Judgment. (App'x at 352a-355a). Despite using "arbitrary and capricious" terminology in its decision,

---

*Reliance Standard Life Ins. Co.*, 141 F.3d 1038 (11th Cir. 1998); however, the issue in *Horton*, which is not present here, was the intersection of the respective burdens with the common law presumption against suicide. The Eleventh Circuit explained in *Horton* that "[d]efendants' evidence about suicide was not so strong that every reasonable factfinder would have had to find the death to be a suicide." *Id.* at 1040. The holding in *Horton* was limited. The Court stated that "when the evidence is inconclusive as to whether the deceased died by accidental or intentional means, use of the legal presumptions against suicide and in favor of accidental death are appropriate." *Id.* at 1030. This Court in *Horton* did *not* establish a presumption in favor of an accidental death in all claims as Claimants argued in their motion. Rather, the Court made it clear that a policyholder has the "burden of proving his entitlement to contractual benefits" including insurance benefits. *Id.* Suicide has never been an issue in this case. Therefore, *Horton* is inapposite which is likely why the district court failed to even cite to *Horton* in its January 3, 2023 Memorandum Opinion. (App'x at 352a-355a).

the district court nevertheless effectively applied a *de novo* standard and substituted its judgment for that of Reliance Standard, the claim fiduciary. The district court's failure to properly apply the deferential standard review is shown by its statement that it was required to "decide whether indeed Dr. Goldfarb's death was an accident or not" and, in that regard, simply found that "there is sufficient evidence to prove that Dr. Goldfarb's death was accidental…." (App'x at 352a). This does not mean, however, that Reliance Standard's decision was not reasonable.

The district court reasoned that:

> Simply put, Dr. Goldfarb is dead. The insurer paid a basic death benefit for the death that was not an intentional suicide. Obviously in retrospect, Dr. Goldfarb should not have taken the risk to climb the mountain, but having done so resulting in his death does not make his death not an "accident."
>
> The sons as beneficiaries are, under the evidence submitted, entitled to the additional death benefit under the policy. The denial of such accidental death benefit was arbitrary and capricious and not reasonable.

(App'x 354a-355a). The district court did not explain why the denial was arbitrary and capricious except for the simple fact that it disagreed with the denial. But in reaching this conclusion, the district court conflated Basic Life and AD&D benefits and never explained why it believed Reliance Standard's decision was unreasonable. The district court entered final judgment in favor of the Claimants and against

Reliance Standard on January 3, 2023. (App'x at 356a). This timely appeal followed. (App'x at 357a-358a).

## STANDARD OF REVIEW

In the Eleventh Circuit, the Court of Appeals is required to review a district court's ruling *de novo*, applying the same legal standards that governed the district court's disposition.[6] In that regard, courts in the Eleventh Circuit apply a six-step analysis for reviewing a fiduciary's benefit decision under ERISA:

1. Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

2. If the administrator's decision in fact is "*de novo* wrong*," then determine whether he was vested with discretion in reviewing claims; if not, end the inquiry and reverse the decision.

3. If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

4. If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

---

[6] *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003); *Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.,* 320 F.3d 1260, 1267 (11th Cir. 2003).

5.      If there is no conflict, then end the inquiry and affirm the decision.

6.      If there is a conflict, the conflict should merely be a factor for the court to taken into account when determining whether an administrator's decision was arbitrary and capricious.[7]

"At each step, the court makes a determination that results in either progression to the next step or ends the inquiry."[8]

The Policy under which Claimants are requesting benefits states the following in its Claims Provisions:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

(App'x at 073a). Where, as in this case, the decision-maker is vested with discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the deferential arbitrary and capricious standard of review applies.[9]

---

[7] *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010). *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989); *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011) (cleaned up).

[8] *Tippett v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1232 (11th Cir. 2006).

[9] *See Firestone Tire & Rubber Co.*, 489 U.S. at 115. *See also Alexandra H. v. Oxford Health Ins., Inc.*, 833 F.3d 1299, 1312 (11th Cir. 2016); *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888, 912 (11th Cir. 1997); *Jett v. Blue Cross & Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989).

"When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard …, the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made."[10]  If there is a reasonable basis, the decision "must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision."[11]  In other words, *it does not matter "[if] the court or anyone else might reach a different conclusion" as long as a reasonable basis for the decision exists.*[12]  Moreover, the administrator's decision "need not be the best possible decision, only one with a rational justification."[13]  Even if the "evidence is close," the denial of benefits cannot be considered arbitrary and capricious and the administrator's decision must be affirmed.[14]

A conflict of interest exists where the administrator both makes eligibility decisions and pays awarded benefits out of its own funds.[15]  However, "[t]he presence of a structural conflict of interest – an unremarkable fact in today's marketplace – constitutes no license, in itself, for a court to enforce its own preferred

---

[10] *Glazer v. Reliance Standard Life Ins. Co.*, 514 F.3d 1241, 1246 (11th Cir. 2008).
[11] *White v. The Coca-Cola Co.*, 542 F.3d 848, 856 (11th Cir. 2008).
[12] *Turner v. Delta Family-Care Disability and Survivorship Plan*, 291 F.3d 1270, 1274 (11th Cir. 1984) (emphasis added).
[13] *Griffis v. Delta Family-Care Disability,* 723 F.2d 822, 825 (11th Cir. 1984*)*.
[14] *Doyle v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1352, 1363 (11th Cir. 2008).
[15] *Metro Life Ins. Co. v. Glenn,* 554 U.S. 105, 111-12 (2008).

*de novo* ruling about a benefits decision."[16]  "Courts must account for a structural conflict of interest, when one exists, as 'a factor' in the analysis: but the basic analysis still centers on assessing whether a reasonable basis existed for the administrator's benefits decision."[17]  Even where a conflict of interest, courts still "owe deference" to the administrator's "discretionary decision-making" as a whole.[18]  Where a conflict exists and a court must reach step six, the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest.[19]

Here, the district court did not properly apply the applicable standard of review.  Rather, the district court simply disagreed with Reliance Standard's decision without considering whether Claimants had even met their burden of proving that Dr. Goldfarb's death was caused directly and independently of all other causes by accidental means and, if so, whether the denial, even if wrong, was nevertheless supported by a reasonable basis.

## SUMMARY OF ARGUMENT

Although stating that Reliance Standard's denial of the claim for AD&D benefits was "arbitrary and capricious" and "not reasonable," the district court's use

---

[16]  *Blankenship,* 644 F.3d at 1356.

[17] *Id.,* at 1355, *citing Conkright v. Frommert*, 559 U.S. 506, 521 (2010).

[18] *Doyle*, 542 F.3d at 1363.

[19] *Id.*, at 1360.

of such terminology rings hollow where it did not follow the proper standard of review in this ERISA case. The district court merely disagreed with Reliance Standard's coverage determination by reasoning that absent evidence that Dr. Goldfarb intentionally committed suicide and/or absent a specific "mountain climbing" exclusion in the AD&D portion of the Policy, his "decision to conduct an activity not excluded as a covered risk in the policy does not lead a reasonable person to conclude that this death was not an 'accident.'" (App'x at 354a). However, disagreement with Reliance Standard's decision is not, by itself, a sufficient basis to reverse it.

Instead, the district court was required to analyze and/or assess whether Reliance Standard's decision was also arbitrary and capricious – *i.e.*, whether Reliance Standard had a reasonable basis upon which to conclude that Claimants had failed to meet their burden of proving that the death was caused directly and independently of all other causes by accidental means (irrespective of any exclusions in the policy) to trigger the AD&D coverage in the first instance. The district court did not do so as it completely ignored the undisputed fact that Dr. Goldfarb's body was never recovered and, therefore, the manner and cause of his death were never actually determined. The *only* evidence presented in this case as to cause of death were photographs that purportedly showed a body face down in the snow near the summit of the mountain – not at the bottom of a crevasse. Even if it is reasonable to

conclude that Dr. Goldfarb's death was accidental (*i.e.,* he sustained a disabling injury while climbing the mountain and succumbed to the weather conditions), it was at least reasonable for Reliance Standard to conclude based on the same evidence (or lack of it) that his death was the result of a natural cause (*i.e.,* he died from a heart attack or stroke while mountain climbing). Again, the Claimants conceded in their summary judgment motion that "it is inconclusive as to whether Dr. Goldfarb died by accidental means" – a point which was completely ignored by the district court. (App'x at 145a). We can only guess as to what actually caused Dr. Goldfarb's death, and a guess cannot be considered proof sufficient to support an award of benefits.

The fact is that it was Claimants' burden of proof, and based on the negligible documentation submitted by them, it was reasonable for Reliance Standard to conclude that they had failed to meet their burden of proving that Dr. Goldfarb's death was accidental. This is not life insurance. Those benefits were paid. To recover under the AD&D portion of the Policy, Claimants had to prove more than just the insured's death. But Claimants had a higher burden in this case. They had to prove that Reliance Standard's decision was arbitrary and capricious, i.e., unreasonable. The district court's decision does not come close to meeting this hurdle.

## ARGUMENT

### I. The District Court Improperly and Effectively Applied a *De Novo* Standard of Review and Substituted Its Own Judgment for That of Reliance Standard When it Awarded Accidental Death Benefits.

#### A. Claimants Failed to Satisfy Their Burden of Proving That Dr. Goldfarb's Death was Accidental.

It is well-recognized in this Circuit – and undisputed in this case – that the insured bears the burden of proving entitlement to benefits under an insurance policy.[20] That burden does not change simply because a particular case is governed by ERISA.[21] Therefore, in order to trigger the AD&D coverage under the Policy, Claimants were required to prove that Dr. Goldfarb's death was caused directly by accidental means and independently of all other causes. It is only "if the insurer claims that a specific policy exclusion applies to deny the insured benefits" that the "insurer generally must prove the exclusion prevents coverage."[22] But Reliance Standard did not rely on a Policy exclusion. The claim was denied because there was no proof that the death resulted from an accident independent of all other causes.

---

[20] *See Glazer*, 524 F.3d at 1247.

[21] *See e.g., Horton*, 141 F.3d at 1040 (stating that "[a] plaintiff suing under [ERISA] bears the burden of proving entitlement to contractual benefits.").

[22] *Id.*

**B.** **The District Court Disregarded the _Claimants'_ Burden of Proving That Dr. Goldfarb's Death Was "Accidental."**

Significantly, in its January 3, 2023 Memorandum Order, the district court failed to acknowledge that Claimants had the burden of proving that Dr. Goldfarb's death was "accidental." Instead, the district court directed its sole inquiry at whether "Dr. Goldfarb's death was an accident or not." (App'x at 352a-355a). This statement not only ignores the burden of proof, but also the standard of review in this ERISA case.

In that regard, the district court – in its mere two-page analysis – relied on the two-step inquiry set forth by the United States Court of Appeals for the First Circuit in _Wickman v. Northwestern Nat'l Ins. Co._, 908 F.2d 1077 (1st Cir. 1990).[23] Specifically, the district court stated that the court must, first, "determine whether the decedent subjectively expected his actions to cause death or serious injury" and, second, "objectively ask whether a reasonable person (with similar background and experience) would have anticipated injury or death in the circumstances." (App'x at 353a) (_citing Wickman_, 908 F.2d at 1083). The district court explained that the court in _Wickman_ had determined that a decedent's death following a fall and/or

---

[23] The _Wickman_ test for accidental death was cited with approval by the Eleventh Circuit in _Buce v. Allianz Life Ins. Co._, 247 F.3d 1133 (11th Cir. 2001). The reasoning in _Wickman_ has also been adopted by numerous other federal Circuit Courts of Appeals. _See e.g., Eckelberry v. Reliastar Life Ins. Co._, 469 F.3d 340, 343 (4th Cir. 2006); _Cozzie v. Metropolitan Life Ins. Co._, 140 F.3d 1104, 1110 (7th Cir. 1998); _Nichols v. Unicare Life Ins. Co._, 739 F.3d 1176, 1182 (8th Cir. 2014).

jump of a bridge was not "accidental" under the terms of an AD&D policy governed by ERISA because a "reasonable person would have anticipated injury or death to result from the dangerous action of climbing a bridge railing." (App'x at 353a) (*citing Wickman*, 908 F.2d at 1088-89). The district believed that "jumping off a bridge is materially different from mountain climbing by an expert mountain climber as it is in this case." (App'x at 354a). But the court ignored the dire warnings from his climbing companion/instructor that were ignored by Dr. Goldfarb. (App'x at 124a).

The district court also cited *Jean Baptiste v. Securian Financial Group, Inc.*, 557 F. Supp. 3d 1271 (S.D. Fla. 2021), a case governed by ERISA, which specifically followed *Wickman*. In *Jean Baptiste,* the court recognized that it was the plaintiff's burden to prove that the loss was accidental and subsequently addressed whether the insured's death was, in fact, an "accident." The court ultimately ruled in favor of the insurer after determining that the insurer's denial of accidental death benefits on the ground that the death was not an accident was not arbitrary and capricious because the decedent had taken drugs at "great risk to his own life." *Id.*, at 1277-78, 1283. Once again, the district court in this case simply stated that "self-administering drugs without a prescription is materially different from mountain climbing", disregarding the circumstances of that climb. (App'x at 354a).

While there are facts distinguishing this claim from *Wickman* and *Jean Baptiste*, they can only support the claim denial. In those cases, the decedents' actual causes of death were known. In *Wickman*, the decedent died from injuries sustained in his fall. In *Jean Baptiste*, the decedent died from a drug overdose. Since the causes of death were not in question in those cases, the courts could apply the two-step analysis set forth in *Wickman* in the context of the actual causes of death and the circumstances surrounding them. In this case, however, Dr. Goldfarb's actual cause of death is completely unknown without reverting to speculation because his body was never recovered. Since Dr. Goldfarb was attempting to climb Pastore Peak by himself, the undeniable fact is that no one saw what happened, how it happened, or why it happened.

For example, if a dead body was found face down next to a roadway, it could not simply be presumed that that the death was accidental in nature if no one saw what happened. While it is possible that the person could have been struck by a car, it is also possible that the person was jogging and died from a heart attack. In fact, even if the body was hit by a car, it could not be presumed that was the cause of death as opposed to being secondary to a natural or intentional cause of death. Further inquiry, such as inspection of the body and, in many cases an autopsy, is required to determine if such a death is accidental. Where a body is not recovered

and no one knows what happened or how it happened, as is the case here, further inquiry is simply not possible.

The Supreme Court of Alaska held in the context of an accidental death claim that the plaintiff's unsupported speculation regarding the cause of death could not defeat the defendant's motion for summary judgment. *See*, *Morgan v. Fortis Benefits Ins. Co.*, 107 P.3d 267 (Alaska 2005). In *Morgan*, the insured died in a single motor vehicle accident. In support of his argument that trial court improperly granted the defendant's motion for summary judgment, the plaintiff argued that the death could have been accidental and not due to intoxication. The plaintiff argued that the collision may have been caused by a moose in the road or slippery conditions. *Id*. at 271.

In *Morgan*, the Court rejected the plaintiff's argument because he did not provide any *facts* "to decide this causation issue." *Id*. The Court further explained that "[m]ere assertions of fact an unsubstantiated suppositions are not enough." *Id*. That is all we have in this case. But in this case, the claimants have also conceded that "it is inconclusive as to whether Dr. Goldfarb died by accidental means". (App'x at 145a). By their own admissions, they have not sustained their burden under any standard of review.

Because Dr. Goldfarb's body was not recovered, an autopsy could not be conducted to determine his actual cause of death. The only evidence presented by

Claimants were photographs taken by a helicopter that purportedly showed a body lying face down in the snow near the summit of Pastore Peak. Significantly, assuming the body in the photographs was that of Dr. Goldfarb (again, it was never recovered), there is *no evidence* that it was positioned at the bottom of a crevasse (one of the specific dangers observed by Mr. Szlanko), contrary to Claimants' argument that Dr. Goldfarb fell. Here, the fact that a body was discovered face down in the snow on the way to the Pastore Peak summit which, without more, provides nothing to establish Dr. Goldfarb's cause of death – much less that his death was accidental.

The fact is that mountain climbing is a physically demanding activity. While it is possible that Dr. Goldfarb's death was caused by injuries sustained in a fall, it is also possible that he died from completely natural causes that could not be considered "accidental," such as a heart attack or stroke brought on by the physical demands of the activity. By automatically jumping to a conclusion that Dr. Goldfarb's death was accidental without recognizing that the actual cause of death is both undetermined and undeterminable, the district court effectively and improperly eliminated Claimants' burden of proof.

**C.  The District Court Misapplied the *Wickman* Test in Any Event.**

Moreover, the district court's attempted application of the *Wickman* test in this case is dubious at best because it appears to presume that a death occurring while

the decedent is mountain climbing is *per se* accidental (irrespective of the actual cause of death) and, therefore, benefits are payable under the AD&D portion of the Policy unless Reliance Standard can establish that an exclusion applies. First, Reliance Standard paid the $500,000 benefits from the Basic Life portion of the Policy based on the presumptive death certificates. But that coverage does not require proof that the death was accidental. Additionally, Reliance Standard never contended that Dr. Goldfarb's death was the result of an intentional suicide, nor did Reliance Standard claim that there could never be AD&D coverage for a death occurring while mountain climbing. Therefore, the district court's discussion of arguments and/or exclusions that Reliance Standard never raised makes no sense.

The *Wickman* test first looks to whether the decedent objectively expected his actions to cause his death or serious injury and, if that cannot be ascertained, looks to whether a reasonable person with similar background and experience would have anticipated injury or death given the circumstances that existed at the time. Even if it is presumed that Dr. Goldfarb died from unnatural causes (despite any proof as to his actual cause of death), the facts and circumstances of this case overwhelmingly establish that serious bodily injury or death was a probable and likely consequence of Dr. Golfarb's volitional act of attempting to climb Pastore Peak by himself with actual knowledge that it could cause serious injury or death.

Dr. Goldfarb was (1) attempting to climb the twelfth highest peak in the work, (2) by himself, (3) during the winter months *which had never been done before*, (4) after his climbing partner, Mr. Szlanko, a certified climbing instructor for over thirty years, had evaluated the condition of the trail to the Pastore Peak Base Camp and found it to be far too dangerous to traverse, (5) after Mr. Szlanko voiced his concerns about the dangerous conditions on the trail to Dr. Goldfarb more than once, (6) after Mr. Szlanko had decided, based on his experience as a certified climbing instructor, not to attempt the climb himself due to the dangerous conditions of the trail, and (7) after Mr. Szlanko had specifically encouraged Dr. Goldfarb not attempt the climb and told Dr. Goldfarb that he could not take responsibility for his actions if he proceeded. (App'x at 124a-126a).

In response to these facts, the district court simply stated that "Dr. Goldfarb should not have taken the risk to climb the mountain, but having done so resulting in his death does not make his death not an 'accident.'" But it does just that under the *Wickman* test that the district court relied upon in the first place. How is climbing a mountain under these circumstances any less dangerous than jumping from a bridge or taking drugs?

Under lesser circumstances, courts have concluded that a death is not accidental when the insured willfully exposes himself to an unnecessary danger. In *Brady v. Oregon Lumber Co.,* 117 Or. [188, 197, 243 P. 96, *reh den* 118 Or. 15, 245

P. 732 (1926)], the court concluded that frostbite was not an accident when the plaintiff left the safety of the lumber camp and walked in heavy snow with knowledge of the danger. The claim for accidental death benefits was also rejected in *In re Estate of Heckman*, 39 P.3d 1228, 1231-32 (Colo. App. 2001). There, the insured left the safety of her car and exposed herself to the cold outside. The court described these actions "an intervening, superseding cause of death." *Id*.

Dr. Goldfarb's disregard of the known dangers in this case is even more apparent. The climbing instructor explained in detail the dangers. (App'x at 124a). Mr. Szlanko "explained [to Dr. Goldfarb] the dangers, a labyrinth of hidden crevasses either covered with loose snow or stones, black ice on the surface which was dangerously braking when trying to place ice axe or crampons, providing no grip." (App'x at 124a). Dr. Goldfarb promised Mr. Szlanko that he would return to the Broad Peak Base Camp the next morning, but did not do so. Dr. Goldfarb decided to reach Pastore Peak Base Camp on his own. During a telephone call, Mr. Szlanko "again called to his attention to the dangers of the terrain and the danger of moving solo on such terrain." (App'x at 124a). Finally, Mr. Szlanko told Dr. Goldfard that he "cannot take responsibility for his action." (App'x at 124a).

Mr. Szlanko could not have made the serious risk of injury or death any clearer to Dr. Goldfarb. This was beyond jumping off of a bridge. This was akin to diving headfirst into an empty pool or driving blindfolded. Policy exclusions are not needed

to understand that when risks producing serious injury or death are known to the insured and later materialize, it is not an accident.

### D. Reliance Standard's Denial of AD&D Benefits Cannot Be Considered Unreasonable and Should Be Upheld.

Again, even if the district court determined that Reliance Standard's denial of AD&D benefits was *de novo* wrong, that should not have ended the district court's inquiry. Rather, the district court also had to assess whether, based on the record before it, Reliance Standard's decision was also arbitrary and capricious. In fact, where the deferential arbitrary and capricious standard applies – a point which has never been disputed in this case based on the explicit language in the Policy – then the court "can skip to step three" in the analysis set forth in *Capone, supra., Firestone Tire & Rubber Co.,* and *Blankenship*, *supra.*, and "determine, *not* whether the decision was right or wrong, but only whether it was arbitrary and capricious."[24]

"Under the arbitrary and capricious standard of review, the court seeks 'to determine whether was a reasonable basis for the [administrator's] decision, based upon the facts known to the administrator at the time the decision was made.'[25] "If the 'evidence is close,' then the administrator did not abuse its discretion, and the

---

[24] *Jean Baptiste*, 557 F. Supp. 3d at 1281. *See also Prelutsky v. Greater Ga. Life Ins. Co.*, 692 Fed. Appx. 969, 972 (11th Cir. 2017).
[25] *Hunt*, 119 F.3d at 912 (*quoting Jett*, 890 F.2d at 1139).

requisite deference compels the affirmance of the administrator's decision."[26]  A plan's decision "must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision."[27]  It does not matter "[if] the court or anyone else might reach a different conclusion" as long as there is a reasonable basis for the decision.[28]

Here, although paying Basic Life benefits in the amount of $500,000 upon receipt of the presumptive death certificates, Reliance Standard reasonably denied the claim for AD&D benefits because the "manner and cause of his presumed death remain unknown" and, therefore, Claimants had not met their burden of proving that Dr. Goldfarb's death was caused directly and solely by an accident.  (App'x at 084a).

The documentation submitted to Reliance Standard, which consisted mostly of Levi Goldfarb's affidavit, news/periodical articles, and the statement from Mr. Szlanko, did not provide a factual basis to conclude that the death was accidental. At most, they establish that rescuers in a helicopter saw something in the snow from a distance and took photographs near the summit of Pastore Peak which, once analyzed and magnified, purportedly showed a lifeless body lying face down in the snow.  Assuming that that body in the photographs was Dr. Goldfarb, these

---

[26] *Richey v. Hartford Life & Accident Ins. Co.*, 608 F. Supp. 2d 1306, 1310 (M.D. Fla. 2009).

[27] *White*, 542 F.3d at 856.

[28] *Turner*, 291 F.3d at 1274.

photographs reveal nothing whatsoever about the manner or cause of his death. Significantly, the Claimants did not obtain statements or affidavits from any of the occupants of the helicopter to describe the conditions in the area where they spotted the body. While Mr. Szlanko, who was not on the helicopter, theorized that Dr. Goldfarb must have fallen from the mountain, there is no evidence whatsoever to support that theory.

Since no autopsy could be performed on a body that was never recovered, since the presumptive death certificates provided no cause of death (App'x at 108a, 110a), and since Claimants provided nothing whatsoever to support their claim that Dr. Goldfarb's presumed death was caused solely by an accident, Reliance Standard's decision must be considered a reasonable one. Reliance Standard clearly had a reasonable basis to conclude that the Claimants had not met their burden of proving that Dr. Goldfarb's death was accidental. Therefore, the denial of the claim for AD&D benefits was not arbitrary and capricious. Even if the district court questioned Reliance Standard's decision, it was still required to give deference to it, which did not happen.

Again, Reliance Standard is not suggesting that mountain climbing can never be considered an accident. But the extreme facts surrounding Dr. Goldfarb's death, as discussed above, prevent this claim from automatically being considered accidental. Dr. Goldfarb knew that the dangers of making this particular climb

exceeded those of routine mountain climbing. He was aware that his climbing partner, a certified mountain climbing instructor for nearly thirty years, had tested the terrain and concluded that it was much too dangerous to traverse and refused to make the climb given those dangers and also warned Dr. Goldfarb not to do so. In fact, Mr. Szlanko specifically told Dr. Goldfarb that he could not take responsibility for him if he chose to make the climb notwithstanding the warnings. Dr. Goldfarb clearly and unequivocally exposed himself to a danger so extreme that Reliance Standard's conclusion cannot be considered arbitrary and capricious. For that reason, the district court erred in reversing Reliance Standard's denial and ordering it to pay the AD&D benefits of $500,000.

## CONCLUSION

For the foregoing reasons, the decision of the district court should be reversed, and judgment should be entered in favor of Reliance Standard. The district court failed to properly apply the arbitrary and capricious standard of review to this claim decision. Instead of considering whether the claim denial was a reasonable one, the district court substituted its own judgment, which is akin to no deference at all.

The district court's conclusory statement at the end of its two-page analysis that Reliance Standard's denial of AD&D benefits was "arbitrary and capricious and not reasonable" on the ground that Dr. Goldfarb's death was not an intentional suicide and that there was no mountain climbing exception in the AD&D portion of

the Policy completely failed to take into consideration the Claimants' burden of establishing coverage in the first instance. But Dr. Goldfarb's cause of death could not be determined since his body was never recovered and there was no other evidence or documentation submitted to Reliance Standard to support or otherwise substantiate Plaintiffs' claim that Dr. Goldfarb's death was caused by an accident independent of all other causes. Reliance Standard's denial of AD&D benefits is supported by reasonable grounds and, therefore, was not arbitrary and capricious. The judgment of the district court should be reversed and judgment entered in favor of Reliance Standard on all claims.

<div style="margin-left:auto; width:50%;">

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

By:   s/ Joshua Bachrach
Joshua Bachrach, Esquire
Two Commerce Square
2001 Market Street, Suite 3100
Philadelphia, PA 19103
215.606.3906 p./215.627.2665 f.
joshua.bachrach@wilsonelser.com
*Attorneys for Appellant Reliance Standard Life Insurance Company*

</div>

Date: _April 24, 2023_____

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), as the brief contains 7,587 words, excluding those parts exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type styles requirements of Fed. R. App. P. 32(a)(6), as this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

> **WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**
>
> By:   s/ Joshua Bachrach
>       Joshua Bachrach, Esquire
>       Two Commerce Square
>       2001 Market Street, Suite 3100
>       Philadelphia, PA 19103
>       215.606.3906 p./215.627.2665 f.
>       joshua.bachrach@wilsonelser.com
>       *Attorneys for Appellant Reliance*
>       *Standard Life Insurance Company*

Date: April 24, 2023

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Appellant was electronically filed on April 24, 2023, with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Lawrence R. Metsch, Esq.
METSCHLAW, P.A.
3900 Flamewood Lane
Hollywood, FL 33021-2109
Tel. (305) 792-2540
Fax. (305) 792-2541
l.metsch@metsch.com
*Attorneys for Plaintiff (via CM/ECF)*

Respectfully submitted,

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

By:    s/ Joshua Bachrach
        Joshua Bachrach, Esquire
        Two Commerce Square
        2001 Market Street, Suite 3100
        Philadelphia, PA 19103
        215.606.3906 p./215.627.2665 f.
        joshua.bachrach@wilsonelser.com
        *Attorneys for Appellant Reliance Standard Life Insurance Company*